HARRY B. KELLEHER, Judge ad hoc.
This proceeding was transferred from the Supreme Court of Louisiana by virtue of an order entered on March 25, 1952, 220 La. 650, 57 So.2d 217, on the ground that the Supreme Court was without jurisdiction because the amount in dispute was less than the sum of $2,000 exclusive of interest, as required by Article 7 of Section 10 of the Constitution.
The plaintiffs are suing to recover the sum of $2,391.50 for work performed in the construction of a house for account of the defendant as owner. The defendant admitted an indebtedness to the plaintiffs under the terms of a building contract amounting to $409.50. The defendant reconvened in the amount of $1,200 on the ground that the work performed in the construction of the house by the plaintiffs was performed in an unworkmanlike manner. The District Court rendered judgment for the plaintiffs in the amount of $1,610.25 and rejected defendant’s reconventional demand. Defendant appealed to the Supreme Court. In transferring the cause to this Court, the Supreme Court was of the opinion that it was without jurisdiction, inasmuch as the defendant admitted an indebtedness to the plaintiffs of $409.50, thereby reducing the sum demanded by plaintiffs from $2,391.50 to $1,982, which was the amount held to be in dispute by the Supreme Court.
The plaintiffs, a partnership doing business in the Parish of Jefferson, comprised of Charles A. Ledet and Oswald J. Bernard, sued the defendant for the sum of $2,391.50, alleging that they had entered into a contract on or about June 8, 1948, to perform the carpentry work and roofing labor to construct a double dwelling in the 800 block of Central Avenue, Westwego, Louisiana, for the agreed sum of $1,500. The plaintiffs further allege that under the terms of a separate agreement, dated June 9, 1948, they undertook to supply the mill work required for the construction of the house for the sum of $900.
The plaintiffs contend that the contract of June 8th, contemplated the construction of what is commonly called in this vicinity a “shotgun” type double, cottage, which might be described as a rectangular shaped building with four rooms in each half of the double cottage, situated between parallel walls, with each room from front to back opening into the next adjoining room. The plaintiffs insist and the preponderance of the evidence supports their contention, that shortly after they began construction of the “shotgun” type cottage which was contemplated by the initial agreement, that the defendant, Rodgers, visited the construction site and informed plaintiffs that he desired to construct a different type building, which he referred to as an “Azalea Gardens” type double cottage. The “Azalea Gardens” type cottage has a floor plan differing radically from the “shotgun” type cottage floor plan, and entailed the construction of a double gabled hip roof, with the overall shape of the building in the “Azalea Gardens” type cottage being in the form of a “T” as distinguished from the rectangular shape of the “shotgun” type cottage.
At the request of the defendant, Rodgers, the plaintiffs accompanied him to the Azalea Gardens Subdivision, which is located on Jefferson Highway in Jefferson Parish, and took actual measurements from a so-called “Azalea Gardens” type cottage. This change in the essential features of the design and floor plan of the building to be *504 constructed necessitated the cancellation and modification of material orders which had previously 'been placed. The evidence shows that actual construction began on or about June 14, 1948, and was in progress until about October 9, 1948. While the construction was in progress, the defendant, Rodgers, visited the site most days twice a day and was therefore fully familiar with the details of the construction and the nature and character of the workmanship' performed by the plaintiffs as the work progressed.
The plaintiffs’ demand is itemized in Paragraph IX of their petition, as follows:
“That in toto there is due, unpaid and owing to petition by defendant the sum of $2,391.00 composed as follows:
(a) Balance on original sash and mill work contract $243.00
(b) Additional sash and mill work due to changes 132.00
(c) Balance on original paint contract labor 75.00
(d) Additional paint labor due to changes 198.00
(e) Balance of original plumbing contract labor 91.50
(f) Labor vehicular costs and other expenses for procurement and transportation of materials, fixtures, fittings and other necessaries to he furnished by defendant 155.00
(g) Added labor due to changes and not shown above 1497.00
Total $2391.50.”'
The defendant conceded that he owed a balance of $409.50 to the plaintiffs under the terms of the initial agreements dated, respectively, June 8 and June 9, 1948, from which it necessarily follows that the additional amount claimed by the plaintiffs of $1,982.00 was largely represented by extras, changes in the basic contract entailing additional labor and material costs plus expenses incurred by the plaintiffs in procuring and transporting material for defendant’s account.
An analysis of the plaintiffs’ petition shows that the sum of $1,497 was claimed for additional carpentry work and $198 for additional painting labor, or a total of $1,695 for these items. The District Court awarded plaintiffs judgment in the sum of $1,610.25, and inasmuch as the defendant conceded an indebtedness due plaintiffs in the sum of $409.50, it is obvious that the District Judge allowed plaintiffs the sum of $1200.75 as an increased cost in the construction of the house, which plainly resulted from the basic changes in the design and construction of the house.
The plantiffs produced two disinterested and qualified experts, each of whom testified that it was their opinion that the house was constructed in a workmanlike manner, the type of house and construction considered. The defendant produced a single expert, whose evidence, fairly construed, supported the defendant’s theory of the case that the workmanship was not up to the standard which the defendant was entitled to under the terms of the contract.
The outcome of this cause necessarily depends upon purely factual issues. Our brother below had the advantage of appraising the testimony of the witnesses at first hand. Our review of the record convinces us that his evaluation of the evidence was manifestly correct. In our appreciation the preponderance of the evidence clearly demonstrates that the plaintiffs have discharged their obligation under the terms of the contract in a workmanlike manner, and the evidence further, shows that the defendant has wholly failed to sustain the burden of proving his recon-ventional demand.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
McBRIDE, J., absent.